Representing Management Exclusively in Workplace Law and Related Litigation

# jackson|lewis
Attorneys at Law

**Jackson Lewis P.C.**
**One North Broadway**
**White Plains, New York 10601**
**Tel 914 328-0404**
**Fax 914 328-1882**
**www.jacksonlewis.com**

| | | | |
|---|---|---|---|
| ALBANY, NY | GRAND RAPIDS, MI | NAPA, CA | RALEIGH-DURHAM, NC |
| ALBUQUERQUE, NM | GREENVILLE, SC | NEW ORLEANS, LA | RAPID CITY, SD |
| ATLANTA, GA | HARTFORD, CT | NEW YORK, NY | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NORFOLK, VA | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | OMAHA, NE | SAINT LOUIS, MO |
| BIRMINGHAM, AL | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN DIEGO, CA |
| BOSTON, MA | LAS VEGAS, NV | ORLANDO, FL | SAN FRANCISCO, CA |
| CHICAGO, IL | LONG ISLAND, NY | OVERLAND PARK, KS | SAN JUAN, PR |
| CINCINNATI, OH | LOS ANGELES, CA | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | MEMPHIS, TN | PHOENIX, AZ | STAMFORD, CT |
| DALLAS, TX | MIAMI, FL | PITTSBURGH, PA | TAMPA, FL |
| DAYTON, OH | MILWAUKEE, WI | PORTLAND, OR | WASHINGTON, DC REGION |
| DENVER, CO | MINNEAPOLIS, MN | PORTSMOUTH, NH | WHITE PLAINS, NY |
| DETROIT, MI | MORRISTOWN, NJ | PROVIDENCE, RI | |

April 10, 2014

**VIA FEDEX**
Plaintiff *Pro Se* Charles Okolie
253 Oak Street
Bellmore, New York  11710

Re:    Charles Okolie v. Isaac Laufer, et al.,
       2:11-cv-05389-JFB-AKT
       (Not ECF Case; *Pro Se* Plaintiff)

Dear Mr. Okolie:

As counsel for Defendants Issac Laufer ("Laufer") and Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center ("Marquis" or "Defendant") in the above-referenced action, we are writing to provide you with the following supplemental information and documents which Magistrate Judge A. Kathleen Tomlinson directed Defendants Marquis and Laufer to produce in the Memorandum and Order Magistrate Judge Tomlinson issued on March 31, 2014 in connection with this action.

1.      Ruling Regarding Revised Request No. 6:  Produce a copy of the 2009 Annual Survey which the New York State Department of Health ("DOH") issued to Defendant Marquis.

In response to Magistrate Tomlinson's Memorandum and Order, a copy of the 2009 Annual Survey which the DOH issued to Marquis is attached hereto as Exhibit "1"

2.      Ruling Regarding Request No. 9:  Produce an affidavit from an appropriate custodian regarding the destruction of Defendant Marquis' August 2009 Emergency Supply Box Sign In/Sign Out records.

In response to Magistrate Tomlinson's Memorandum and Order, an Affidavit from Marquis' Administrator Mike Scarione is attached hereto as Exhibit "2." This Affidavit explains how the August 2009 Emergency Supply Box Sign In/Sign Out records were destroyed by water damage in Marquis' storage facility during Hurricane Sandy.  The Affidavit also provides the additional information Magistrate Judge Tomlinson specified in the Memorandum and Order.


Attorneys at Law

Charles Okolie
April 10, 2014
Page 2

     3.   <u>Ruling Regarding Revised Request No. 12</u>:   Produce copies of any performance reviews/evaluations for Lori Maurel, Christine Kiel, Erin McQuiston, Randi Glasgow, Sandrine Etienne and Jessica Rodriguez from October 2006 to October 2009 other than the personnel documents concerning the counseling and/or disciplinary measures these individuals received which Defendant Marquis has already produced.

     Defendant Marquis did not conduct formal or informal performance reviews or evaluations between October 2006 and October 2009.  Defendants' June 29, 2012 Document Responses included copies of all personnel documents in the possession or control of Defendant Marquis which are related to the counseling and/or disciplinary measures received by the individuals named in Plaintiff's Revised Request No. 12 between October 2006 and October 2009.

     4.   <u>Ruling Regarding Revised Request No. 26</u>:   Produce copies of any administrative complaints Defendant Marquis received from the New York State Division of Human Rights ("NYSDHR"), the U.S. Equal Employment Opportunity Commission ("EEOC") or any other administrative agency alleging the existence of a hostile work environment based on sex, race or color between January 1, 2008 and August 19, 2009, copies of documents Defendant Marquis submitted in response to such complaints, and copies of documents related to the agencies' disposition of the complaints (other than the documents which Defendant Marquis has already been produced regarding the complaint alleging sexual harassment which Patricia Perez filed against Defendant Marquis with the NYSDHR on or about June 4, 2009).

     Defendant Marquis does not possess any documents which are responsive to Magistrate Judge Tomlinson's ruling on Plaintiff's Revised Request No. 26 other than the documents concerning Ms. Perez's administrative complaint alleging sexual harassment which were annexed to Defendant's June 29, 2012 Document Responses.

                    Very truly yours,

                    JACKSON LEWIS P.C.

                    Scott T. Baken
                    Isaac J. Burker

/rs
Enclosures

cc:    The Honorable A. Kathleen Tomlinson (Via ECF and FedEx)
       Christopher H. Thompson, Esq., Counsel to Defendant Lori Maurel (Via FedEx)

# EXHIBIT

# "1"



# STATE OF NEW YORK
# DEPARTMENT OF HEALTH

**Central Islip Field Office**
Courthouse Corporate Center
320 Carleton Avenue, Suite 5000     Central Islip, New York 11722     (631) 851-3080

Richard F. Daines, M.D.                                                        James W. Clyne, Jr.
*Commissioner*                                                                 *Executive Deputy Commissioner*

February 17, 2010

*from Survey Book*
*from hobby*

Mr. Isaac Laufer
Owner
Marquis Care Center, Inc.
2 Medical Plaza
Glen Cove, NY 11542

Facility: **Marquis Rehabilitation & Nursing Center**
Medicare Provider #: **335141**
Survey Exit Date: **12/07/2009**
Type of Survey: **Recertification**

Dear Mr. Laufer,

The Article 28 and Medicare/Medicaid survey of your facility on 12/07/2009 found deficiencies whereby corrections were required.

Your Plan of Correction (POC) was reviewed on 02/09/2010 and determined to be acceptable with alleged compliance on 01/31/2010. Your facility is required to maintain documentation that substantial compliance has been achieved and will be maintained, as described in your POC.

As a result, this office will notify the Centers for Medicare and Medicaid Services that the facility is in substantial compliance with Federal and State requirements. A copy of the Nursing Home Survey Profile Summary is enclosed.

Survey reports and the Nursing Home Survey Profile Summary must be made available to residents and their representatives in a place that is readily accessible and in a manner that allows review without the need to ask nursing home staff for these documents. If necessary, a notice of the place where they are available is to be posted in a public place. Survey reports become disclosable immediately after being made available to the facility and must remain accessible until you receive the results of a new recertification survey.

MARQUIS
CONFIDENTIAL
000420

To protect resident confidentiality, do not post the resident roster.

If you have any questions you may contact Regina Cygan at 631-851-3607.

Sincerely,

*Richard M. Healion*

Richard Healion
Program Director Long Term Care Program
Metropolitan Area Regional Office


Enclosure

cc:     Ms. Jill Smoller, Administrator
        Centers for Medicare and Medicaid Services
        Ms. Margaret Hromada, Ombudsman Program Coordinator

2

MARQUIS
CONFIDENTIAL
000421

# Nursing Home

NEW YORK STATE DEPARTMENT OF HEALTH

# Survey Profile Summary

Facility: **Marquis Care Center, Inc.**

| | | |
|---|---|---|
| Date this visit completed | mo/day/yr **02/09/2010** | **0492** |

Follow-up to visit(s) on   **12/07/2009** ☐

[ ] 1 = Standard Survey
[ X ] 2 = Post Survey Revisit
[ ] 3 = Complaint Survey
[ ] 4 = xxxxxxxxxxx
[ ] 5 = Other Survey
[ ] 6 = HCFA Survey

Profile Summary Reissued   mo/day/yr **02/17/2010**

---

**Marked Box Represents Overall Facility Survey Rating**

[ ] 1. Compliance/No Deficiencies   [ X ] 2. Substantial Compliance   [ ] 3. Correction Required

[ ] 4. Significant Correction Required   [ ] 5. Not In Substantial Compliance   [ ] 6. Immediate Jeopardy

7.   Substandard Quality of Care Identified: Enter "Y" or "N"   [ N ]

---

Enter one of the following codes below to the appropriate box for which deficiency(ies) were identified:

Key:   Blank Box = No deficiencies or minimal deficiencies in this requirement
D-E-F = Correction Required deficiencies in this requirement
G-H-I = Significant Correction Required deficiencies in this requirement
J-K-L = Immediate Jeopardy deficiencies in this requirement
Q = Substandard Quality of Care deficiencies in this requirement
Y = Deficiencies in Life Safety From Fire Requirement

**A.  RESIDENT RIGHTS**

[ ]   Exercise of Rights
[ ]   Notice of Rights and Services
[ ]   Protection of Resident Funds
[ ]   Free Choice
[ ]   Privacy and Confidentiality
[ ]   Grievances
[ ]   Examination of Survey Results
[ ]   Work
[ ]   Mail
[ ]   Access and Visitation Rights
[ ]   Telephone
[ ]   Personal Property
[ ]   Married couples
[ ]   Self-Administration of Drugs
[ ]   Refusal of Certain Transfers

**B.  ADMISSION TRANS/DISCHARGE RIGHTS**

[ ]   Transfer and Discharge
[ ]   Notice of Bed-hold Policy & Readmission
[ ]   Equal Access to Quality Care
[ ]   Admissions Policy

**C.  RESIDENT BEHAVIOR/FACILITY PRACTICE**

[ ]   Restraints   [ ]  Staff Treatment of Residents
[ ]   Abuse

**D.  QUALITY OF LIFE**

[ ]   Quality of Life
[ ]   Dignity
[ ]   Self-Determination and Participation
[ ]   Participation Resident/Family Group
[ ]   Participation in Other Activities
[ ]   Accommodation of Needs
[ ]   Activities
[ ]   Social Services
[ ]   Environment

DOH-1268 (1/98) Page 1 of 2

MARQUIS
CONFIDENTIAL
000422

**E.  RESIDENT ASSESSMENT**

[ ]  Admission Orders
[ ]  Comprehensive Assessment
[ ]  Accuracy of Assessment
[ ]  Comprehensive Care Plans
[ ]  Discharge Summary
[ ]  PASARR

**F.  QUALITY OF CARE**

[ ]  Quality of Care            [ ]  Naso-gastric Tubes
[ ]  Activities of Daily Living  [ ]  Accidents
[ ]  Vision and Hearing         [ ]  Nutrition
[ ]  Pressure Sores            [ ]  Hydration
[ ]  Urinary Incontinence       [ ]  Special Needs
[ ]  Range of Motion           [ ]  Unnecessary Drugs
[ ]  Mental and Psychosocial    [ ]  Medication Errors
     Functioning
                              [ ]  Influenza and
                                   Pneumococcal
                                   Immunization

**G.  NURSING SERVICES**

[ ]  Sufficient Staff           [ ]  Registered Nurse

**H.  DIETARY SERVICES**

[ ]  Dietary Services
[ ]  Staffing
[ ]  Sufficient Staff
[ ]  Menus and Nutritional Adequacy
[ ]  Food
[ ]  Therapeutic Diets
[ ]  Frequency of Meals
[ ]  Assistive Devices
[ ]  Sanitary Conditions

**I.  PHYSICIAN SERVICES**

[ ]  Physician Supervision
[ ]  Physician Visits
[ ]  Frequency of Physician Visits
[ ]  Available Physicians for Emergency Care
[ ]  Physician Delegation of Tasks
[ ]  Performance of Physician Tasks in NF's

**J.  SPECIALIZED REHABILITATIVE SERVICES**

[ ]  Provision of Services       [ ]  Qualifications

**K.  DENTAL SERVICES**

[ ]  Skilled Nursing Facilities  [ ]  Nursing Facilities

**L.  PHARMACY SERVICES**

[ ]  Pharmacy Services
[ ]  Procedures
[ ]  Service Consultation
[ ]  Drug Regimen Review
[ ]  Labeling of Drugs and Biologicals
[ ]  Storage of Drugs and Biologicals

**M.  INFECTION CONTROL**

[ ]  Infection Control Program
[ ]  Preventing spread of Infection
[ ]  Linens

**N.  PHYSICAL ENVIRONMENT**

[ ]  Physical Environment
[ ]  Life Safety From Fire
[ ]  Emergency Power
[ ]  Space and Equipment
[ ]  Resident Rooms
[ ]  Toilet Facilities
[ ]  Resident Call System
[ ]  Dining and Resident Activities
[ ]  Other Environmental Conditions

**O.  ADMINISTRATION**

[ ]  Administration
[ ]  Licensure
[ ]  Compliance Federal/State/Local Law
[ ]  Relationship to other HHS Regulation
[ ]  Governing Body
[ ]  Required Training of Nurse Aides
[ ]  Proficiency of Nurse Aides
[ ]  Staff Qualifications
[ ]  Use of Outside Resources
[ ]  Medical Director
[ ]  Laboratory Services
[ ]  Radiology, Other Diagnostic Service
[ ]  Clinical Records
[ ]  Disaster, Emergency Preparedness
[ ]  Transfer Agreement
[ ]  Quality Assessment and Assurance
[ ]  Disclosure of Ownership

[ ] STATE ONLY DEFICIENCIES

MARQUIS
CONFIDENTIAL
000423

 **STATE OF NEW YORK**
**DEPARTMENT OF HEALTH**

**Central Islip Field Office**
Courthouse Corporate Center
320 Carleton Avenue, Suite 5000    Central Islip, New York 11722    (631) 851-3080

Richard F. Daines, M.D.                                                James W. Clyne, Jr.
*Commissioner*                                                         *Executive Deputy Commissioner*

January 12, 2010

Ms. Jill Smoller
Acting Administrator
Marquis Rehabilitation & Nursing Center
2 Medical Plaza
Glen Cove, NY  11542

Facility: **Marquis Rehabilitation & Nursing Center**
Medicare Provider #: **335141**
Survey Exit Date: **12/07/2009**
Type of Survey: **Recertification**

Dear Mr. Smoller:

This office has reviewed the Plan of Correction (POC) from the above referenced survey and determined that the POC is acceptable.

As a result of this decision, a post-survey revisit may be conducted to validate that the facility has made the corrections required.

If you have any questions you may contact MaryAnn Robertson at 631-851-3607.

Sincerely,

*Richard M. Healion*

Richard Healion
Program Director Long Term Care Program
Metropolitan Area Regional Office

MARQUIS
CONFIDENTIAL
000424

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING _____ | | |
| | | B. WING _____ | | 12/07/2009 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA GLEN COVE, NY 11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 332 SS=D | 483.25(m)(1) MEDICATION ERRORS<br><br>The facility must ensure that it is free of medication error rates of five percent or greater.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on observations, record reviews, and staff interviews during the recertification survey, the facility did not ensure that the medication error rate was less than 5%. This was evident for 4 of 40 opportunities for error resulting in a medication error rate of 10% for one in sample resident (Resident #9) and one out of sample resident (Resident #21) during medication pass observation. This resulted in no actual harm with the potential for more than minimal harm that is not immediate jeopardy.<br><br>The findings are:<br><br>1.) During a medication pass on 12/4/09 at 9:00 AM on the Madison Unit, the unit Medication Licensed Practical Nurse (LPN) was observed to prepare and administer medications for Resident #9 which included: Colace 100 mg (milligrams) one cap (capsule), Multi vitamin one tab (tablet), Vitamin C 500 mg one tab, Zinc 220 mg one tab, Lopressor 100 mg one tab, Oyster Shell Calcium 500 mg with Vitamin D one tab, Norvasc 10 mg one tab, Zestril 10 mg one tab, and Trental 400 mg one capsule. The LPN medication nurse was observed to crush the medications, mix each medication in applesauce and administer them to Resident #9.<br><br>A review of the Physician's Orders dated 11/20/09 | F 332 | **F-332 Medication Errors**<br><br>A. Residents # 9 & #21 were not affected by alleged deficient practice.<br><br>B. All residents have the potential to be affected by alleged deficient practice.<br><br>C-1 Nursing Supervisor reviewed all current resident MAR's for omissions and *"may crush"* medication orders; then compared to see if any meds had *"do not crush"* instructions on the blister pack. No other occurrences of alleged deficient practice found.<br><br>C-2 Cited Medication Nurse (LPN) was removed from unit and in-serviced by Director of Nursing (DNS) on proper medication administration. Emphasized administering all medications, and following all instructions on blister pack, including *"Do Not Crush."*<br><br>C-3 The In-service Coordinator or designee will conduct medication pass competency for all nurses to ensure proper medication dispensing. | 12/8/09<br><br>12/8/09<br><br>12/15/09<br><br>12/8/09<br><br>1/31/09 |

| LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|
| *Elliot E. Uhr* | ADMINISTRATOR | 12-23-09 |

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

CONFIDENTIAL
000425

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA GLEN COVE, NY 11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 332 | Continued From page 1 <br><br> revealed that Resident #9 also was to receive Vesicare 5 mg daily, Plavix 75 mg daily and Feosol 325 mg one tab twice daily. These medications were not administered as ordered by the physician. <br><br> Review of the Trental blister pack prepared by the pharmacy for Resident # 9 documented instructions which included Do Not Crush. <br><br> Review of the December Medication Administration Record (MAR) for Resident #9 documented instructions for Trental which included Do Not Crush. The MAR also documented that Vesicare 5 mg, Plavix 75 mg and Feosol 325 mg were scheduled to be administered at 9 AM. <br><br> 2.) During a medication pass on 12/4/09 at 9:15 AM on the Madison Unit, The LPN medication nurse was observed to prepare and administer medications to Resident #21 which included Apresoline 25 mg one tab, Norvasc 10 mg one tab, Colace 100 mg two caps, and Calcium Carbonate 500 mg one chewable tab. <br><br> A review of the Physician's Orders dated 11/29/09 revealed that Resident #21 also was to receive Nasaline 0.25% nasal spray 2 sprays to each nostril twice daily. <br><br> Review of the December Medication Administration Record (MAR) for Resident #21 documented orders for Resident #21 to receive Nasaiide 0.025% Spray 2 sprays to each nostril at 9 AM and 9 PM. Resident #21 did not receive the nasal spray during the medication observation. <br><br> During an interview with the LPN medication | F 332 | D. The Nursing Supervisor or designee will conduct an audit of 10% of the resident's charts to ensure accurate medication dispensing/documentation. Findings will be reported to the DNS on a monthly basis. The DNS will report synopsis of findings at the quarterly QA meetings. | 1/31/10 |

MARQUIS
CONFIDENTIAL
000426

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES ND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER MARQUIS REHABILITATION & NURSING CENTER | STREET ADDRESS, CITY, STATE, ZIP CODE 2 MEDICAL PLAZA GLEN COVE, NY  11542 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 332 | Continued From page 2 | F 332 | | |
| | nurse on 12/4/09 at 12 noon  the medication orders and the medication administration record (MAR) were reviewed for Residents #9 and #21. The LPN had signed all the medications as administered for Resident #9 and #21. When asked how she would know if she had given the resident all of their medications, the LPN medication nurse stated she would would review the MAR and check that she had signed the blister pack. The LPN medication nurse retrieved the blister packs for Vesicare and Plavix for Resident #9 and acknowledged that they had not been signed on the back. The LPN further stated that she had not noted that the medication Trental should not have been crushed. The LPN then stated she would give the residents the medications that had not been dispensed. | | | |
| | The Director of Nursing was interviewed on 12/4/09 at 12:45 PM and stated that all medications should be given as per the Physician Orders and that he would follow up procedures with the LPN medication nurse. | | | |
| | The Physician for Resident # 9 was interviewed on 12/7/09 at 12:00 noon and stated that Trental should not be crushed but could be given whole in applesauce. | | | |
| | The facility Policy and Procedure for Medication Administration  dated 12/02  included documentation that "Drugs are administered in accordance with written orders of the attending physician at the prescribed time". | | | |
| | 415.12 (m)(1) | | | |
| F 444 SS=D | 483.65(b)(3) PREVENTING SPREAD OF INFECTION | F 444 | | |

MARQUIS
CONFIDENTIAL
000427

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 335141 | A. BUILDING _____ <br> B. WING _____ | | 12/07/2009 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA <br> GLEN COVE, NY  11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 444 | Continued From page 3 <br><br> The facility must require staff to wash their hands after each direct resident contact for which handwashing is indicated by accepted professional practice. <br><br> This REQUIREMENT is not met as evidenced by: <br> Based on observations and staff interviews during the recertification survey, the facility did not ensure that adequate handwashing measures were followed during the medication administration pass for three of three residents observed during medication pass on the Madison unit (Resident #9, #21 and #22). This resulted in no actual harm with the potential for more than minimal harm that is not immediate jeopardy. <br><br> The findings are: <br><br> A medication pass was observed on 12/04/09 at 9:00 AM. The Licensed Practical (LPN) medication nurse was observed to prepare and administer medications to Resident #9. The LPN medication nurse then proceeded to prepare medications for Resident #22, transport Resident #22 via her wheel chair into another residents bedroom, take Resident #22's  blood pressure and then administer the resident medication. She then repositioned the resident in the hallway. The Licensed Practical (LPN) medication nurse was then observed to prepare medications for Resident #21, transport the resident into Resident #9's bedroom, and take Resident #21's blood pressure. Resident #9's chair alarm triggered while the LPN medication nurse was in the room. The LPN medication nurse proceeded to reset Resident #9's chair alarm and to position his feet onto the foot rests of his wheel chair. She then | F 444 | **F-444 Preventing Spread of Infection** <br><br> A. Residents 9 ,21 and 22 were not affected by alleged deficient practice. <br><br> B. All residents who were treated by this LPN have the potential to be affected by alleged deficient practice. <br><br> C-1 Nursing Supervisor performed audit, via direct observation, of each medication nurse during their medication pass and found no other residents affected by alleged deficient practice. <br><br> C-2 Cited Medication Nurse (LPN) was removed from unit and in-serviced by Director of Nursing (DNS) on proper medication administration and in-serviced on proper hand washing technique, with an emphasis on hand washing or using hand sanitizer before, after and between residents | 12/8/09 <br><br> 12/8/09 <br><br> 12/8/09 <br><br> 12/8/09 |

| | | | |
|---|---|---|---|
| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: TDC111 | Facility ID: 0492 | If continuation sheet Page 4 of 5 |

MARQUIS
CONFIDENTIAL
000428

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA GLEN COVE, NY 11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 444 | Continued From page 4 | F 444 | C-3 All nurses will receive an in-service on proper medication administration, with an emphasis on proper hand washing technique, hand washing or the use of sanitizer, before, after and between residents during medication administration | 1/31/10 |
| | proceeded to administer medications to Resident #21. | | | |
| | It was observed that the LPN medication nurse did not wash her hands or use hand sanitizer between administration of medications for Resident #9, and Resident #22 or Resident #21. | | | |
| | An interview was held on 12/4/09 at 9:30 AM with the LPN medication nurse. The LPN stated that she did not wash her hands or use hand sanitizer in between residents' medication administrations. The LPN further stated that she usually uses the sanitizing gel between medication administration for each resident and then washes her hands with soap and water every three residents. | | D. Competency demonstration of hand washing by In-service Coordinator or designee will be done for 10% of all direct care staff monthly for 3 months and quarterly, thereafter. Results of the audit will be provided to the DNS. DNS will report findings at quarterly QA meeting. | 1/31/10 |
| | The facility's policy/procedure dated 8/1/00 titled "Handwashing" documented that hands should be washed between the handling of individual residents. | | | |
| | The Director of Nursing Services (DNS) was interviewed on 12/04/09 at 10:20 AM and stated that hands should be washed with soap and water during medication pass every 5 residents and sanitizing gel should be used between each resident. | | | |
| | 415.19(b)(4) | | | |

MARQUIS
CONFIDENTIAL
000429

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING 01 - MARQUIS CARE CENTER B. WING _____ | (X3) DATE SURVEY COMPLETED 12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA GLEN COVE, NY 11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 000 | INITIAL COMMENTS | K 000 | | |
| | 42 CFR 483.70(a): The facility must meet the applicable provisions of The 2000 Edition of The Life Safety Code (LSC) of The National Fire Protection Association (NFPA). | | | |
| K 025 SS=C | NFPA 101 LIFE SAFETY CODE STANDARD Smoke barriers are constructed to provide at least a one half hour fire resistance rating in accordance with 8.3. Smoke barriers may terminate at an atrium wall. Windows are protected by fire-rated glazing or by wired glass panels and steel frames. A minimum of two separate compartments are provided on each floor. Dampers are not required in duct penetrations of smoke barriers in fully ducted heating, ventilating, and air conditioning systems. 19.3.7.3, 19.3.7.5, 19.1.6.3, 19.1.6.4 | K 025 | **K025-NFPA 101 Life Safety Code Standard** A. No residents were affected by the alleged deficient practice. B. All residents have the potential to be affected by alleged deficient practice. C.1 Director of Maintenance filled all identified smoke barrier penetrations with approved filler. C.2 Director of Maintenance or designee will conduct weekly rounds of smoke barriers to ensure there are no future penetrations. D. Director of Maintenance will compile monthly statistics regarding smoke barrier penetrations and report findings to the Administrator. The Administrator will report information at the quarterly QA meeting. | 12/8/09 12/8/09 12/8/09 12/8/09 1/31/10 |
| | This STANDARD is not met as evidenced by: Based on observation and interview it was determined that the facility did not ensure that the smoke barriers had a fire resistance rating of at least 30 minutes and was capable of resisting the passage of smoke. This was observed on 2 of 3 residents ' units. This resulted in no actual harm with the potential for minimal harm. The findings are: During life safety inspections on 12/04/09 between 11:15AM and 12:00PM, inspections of the smoke barriers revealed unfilled penetrations | | | |

| LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM CMS-2567(02-99) Previous Versions Obsolete

MARQUIS
CONFIDENTIAL
000430

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>335141 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING    01 - MARQUIS CARE CENTER<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>MARQUIS REHABILITATION & NURSING CENTER | STREET ADDRESS, CITY, STATE, ZIP CODE<br>2 MEDICAL PLAZA<br>GLEN COVE, NY  11542 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 025 | Continued From page 1<br><br>in the following locations on 2 of 3 units:<br><br>1. Madison Unit<br><br>a. Two unfilled interstitial spaces measuring approximately 2 inches in length and ¼ inches in width were observed where the smoke barrier meets with the ceiling. This was observed above the double leaf smoke barrier doors in the vicinity of resident room 42 where two sets of wires were observed passing through the interstitial spaces within the smoke barriers.<br>b. One unfilled hole measuring approximately 1.5 inches in diameter was observed around a set of wires in the smoke barrier wall above the double leaf smoke barrier doors in the vicinity of the Medical Director's office.<br><br>2. Broadway Unit<br>a. One unfilled hole measuring approximately 1 inch in diameter was observed around a set of wires in the smoke barrier walls above the double leaf smoke barrier doors in the vicinity of the Rehabilitation Department and resident room 35<br><br>In an interview at approximately 11:35AM the Director of Environmental Services stated that the fire alarm company recently installed smoke detectors.  He contacted a maintenance employee to fill the identified unfilled holes in the smoke barrier walls. | K 025 | | |
| K 038<br>SS=D | NYCRR 711.2(a)(1)<br>NFPA 101 LIFE SAFETY CODE STANDARD<br><br>Exit access is arranged so that exits are readily accessible at all times in accordance with section 7.1.    19.2.1 | K 038 | **K038-NFPA 101 Life Safety Code Standard**<br><br>A. No residents were affected by the alleged deficient practice. | 12/8/09 |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID:TDC121          Facility ID: 0492          If continuation sheet Page 2 of 10

MARQUIS
CONFIDENTIAL
000431

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING    01 - MARQUIS CARE CENTER   B. WING _____ | (X3) DATE SURVEY COMPLETED  12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER MARQUIS REHABILITATION & NURSING CENTER | STREET ADDRESS, CITY, STATE, ZIP CODE 2 MEDICAL PLAZA GLEN COVE, NY 11542 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 038 | Continued From page 2 | K 038 | B. All residents have the potential to be affected by alleged deficient practice. | 12/8/09 |
| | | | C.1 Side bolt lock was immediately removed from the exit door. | 12/8/09 |
| | This STANDARD is not met as evidenced by: Based on observation and staff interview, a slide-bolt locking mechanism was noted on the outside portion of the emergency exit door in the vicinity of resident room 51 on one of three resident units. | | C.2 In-service Coordinator or designee will provide in-service to all maintenance workers on proper locking mechanisms for doors. | 1/31/10 |
| | This resulted in no actual harm with the potential for more than minimal harm that is not immediate jeopardy.  The findings are:  On 12/4/09 at approximately 11:00am during the recertification survey, a slide-bolt locking mechanism was noted on the outside portion of the emergency exit door in the vicinity of resident room 51 on the Park Ave unit. If the lock was engaged, this configuration would prevent egress through this emergency exit. | | C.3 Director of Maintenance will be responsible for ensuring that all contractors' work is examined daily to be sure that no locks have inadvertently been placed on doors. | 1/31/10 |
| | In an interview on 12/4/09 at approximately 11:00am, the facility consultant stated that when construction is taking place in this outside area, the workers engage the lock to prevent residents from accessing the construction area. He further stated that he would remove the lock immediately. | | D. Director of Maintenance will make monthly rounds to ensure emergency exits are available and safe for egress.  He will report findings to Administrator who will in turn report findings at quarterly QA meeting. | 1/31/10 |
| K 052 SS=D | 711.2(a)(1), 2000 NFPA 101- 19.2.1, 7.1. NFPA 101 LIFE SAFETY CODE STANDARD  A fire alarm system required for life safety is installed, tested, and maintained in accordance with NFPA 70 National Electrical Code and NFPA | K 052 | **K052-NFPA 101 Life Safety Code Standard**  A. No residents were affected by the alleged deficient practice. | 12/8/09 |

MARQUIS
CONFIDENTIAL
000432

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING    01 - MARQUIS CARE CENTER B. WING _____ | (X3) DATE SURVEY COMPLETED 12/07/2009 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**MARQUIS REHABILITATION & NURSING CENTER**

STREET ADDRESS, CITY, STATE, ZIP CODE
**2 MEDICAL PLAZA**
**GLEN COVE, NY  11542**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 052 | Continued From page 3 | K 052 | B. All residents have the potential to be affected by alleged deficient practice. | 12/8/09 |
| | 72. The system has an approved maintenance and testing program complying with applicable requirements of NFPA 70 and 72.    9.6.1.4 | | | |
| | | | C.1 Director of Maintenance contacted fir alarm company.  All signal trouble, panel trouble and smoke detector trouble were addressed and corrected by fire alarm company. | 12/15/09 |
| | This STANDARD  is not met as evidenced by: Based on observations, and staff interviews, it was determined that the facility did not ensure that the building ' s fire alarm system is maintained in good repair in that the fire alarm panels displayed a trouble signal throughout the survey. | | C.2 Director of Maintenance or designee will contact fire alarm company immediately when panel is identifying potential trouble. | 1/15/10 |
| | This resulted in no actual harm with the potential for more than minimal harm that is not immediate jeopardy. | | D. Director of Maintenance, in conjunction with the fire alarm company, will conduct monthly checks of fire alarm system to ensure proper functionality of system.  Results of tests will be given to Administrator who will present them at quarterly QA meeting. | 1/15/10 |
| | The findings are: | | | |
| | During the life safety inspections on 12/04/09 between 9:00AM and 2:00PM the fire alarm panels located at the main entrance and the fire alarm control room continuously displayed visible trouble signals that read   " loop 2 device 102 " . At approximately 9:10AM the Director of Environmental Services stated that the trouble signals could be a faulty smoke detector and further stated that the servicing company would be contacted for the necessary trouble shooting and repairs of the system. | | | |

MARQUIS
CONFIDENTIAL
000433

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 335141 | A. BUILDING   01 - MARQUIS CARE CENTER<br>B. WING _____ | | 12/07/2009 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA<br>GLEN COVE, NY  11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 052 | Continued From page 4<br>NYCRR 711.2(a)(1) | K 052 | | |
| K 061<br>SS=D | NFPA 101 LIFE SAFETY CODE STANDARD<br><br>Required automatic sprinkler systems have valves supervised so that at least a local alarm will sound when the valves are closed.    NFPA 72, 9.7.2.1<br><br><br><br>This STANDARD  is not met as evidenced by:<br>2000 NFPA 101 LSC Chapter 19.3.5 Extinguishment Requirements.<br>19.3.5.1<br>Where required by 19.1.6, health care facilities shall be protected throughout by an approved, supervised automatic sprinkler system in accordance with Section 9.7.<br><br>9.7 AUTOMATIC SPRINKLERS AND OTHER EXTINGUISHING EQUIPMENT<br>9.7.2 Supervision.<br>9.7.2.1* Supervisory Signals.<br>Where supervised automatic sprinkler systems are required by another section of this Code, supervisory attachments shall be installed and monitored for integrity in accordance with NFPA 72, National Fire Alarm Code, and a distinctive supervisory signal shall be provided to indicate a condition that would impair the satisfactory operation of the sprinkler system. Monitoring shall include, but shall not be limited to, monitoring of control valves, fire pump power supplies and running conditions, water tank levels and temperatures, tank pressure, and air pressure on dry-pipe valves. Supervisory signals shall sound and shall be displayed either at a location within | K 061 | **K061-NFPA 101 Life Safety Code Standard**<br><br>A. No residents were affected by the alleged deficient practice.<br><br>B. All residents have the potential to be affected by alleged deficient practice.<br><br>C.1 Director of Maintenance contacted alarm company and the tamper valve was immediately fixed.<br><br>C.2 The Director of Maintenance, in conjunction with the alarm company, will conduct monthly rounds to ensure functionality of a local alarm when the valves are closed.<br><br>D. Director of Maintenance will keep a log of functionality of local alarm testing and report results to Administrator.  The Administrator will report findings at the quarterly QA meeting. | 12/8/09<br><br>12/8/09<br><br>12/8/09<br><br>12/8/09<br><br>1/31/10 |

MARQUIS
CONFIDENTIAL
000434

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING ___ 01 - MARQUIS CARE CENTER B. WING _____ | (X3) DATE SURVEY COMPLETED 12/07/2009 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

MARQUIS REHABILITATION & NURSING CENTER

STREET ADDRESS, CITY, STATE, ZIP CODE
2 MEDICAL PLAZA
GLEN COVE, NY  11542

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 061 | Continued From page 5 the protected building that is constantly attended by qualified personnel or at an approved, remotely located receiving facility.<br><br>Based on observation and staff interview, one of three electronic supervisory devices on the main sprinkler pipe in the kitchen did not alarm when tested.<br><br>This resulted in no actual harm with potential for more than minimal harm that is not immediate jeopardy.<br><br>The findings are:<br><br>On 12/4/09 at approximately 11:50am during the recertification survey, one of three electronic supervisory devices on the main sprinkler pipe in the kitchen did not alarm when the valve was closed. The valve was observed chained and locked in the open position.<br><br>In an interview on 12/4/09 at approximately 11:50am, the Director of Environmental Services stated that he would call the company to fix the device immediately. | K 061 | | |
| K 062 SS=E | 711.2(a)(1), 2000 NFPA 101- 9.7.2.1. NFPA 101 LIFE SAFETY CODE STANDARD<br><br>Required automatic sprinkler systems are continuously maintained in reliable operating condition and are inspected and tested periodically.   19.7.6, 4.6.12, NFPA 13, NFPA 25, 9.7.5 | K 062 | **K062-NFPA 101 Life Safety Code Standard**<br><br>A. No residents were affected by the alleged deficient practice.<br><br>B. All residents have the potential to be affected by alleged deficient practice. | 12/8/09<br><br>12/8/09 |

MARQUIS
CONFIDENTIAL
000435

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION A. BUILDING   01 - MARQUIS CARE CENTER B. WING _____ | (X3) DATE SURVEY COMPLETED 12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA GLEN COVE, NY 11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 062 | Continued From page 6 This STANDARD is not met as evidenced by: 1998 NFPA 25, Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems | K 062 | C.1 Director of Maintenance contacted sprinkler company to review issues regarding sprinkler system.  Sprinkler company made walking rounds of facility and will make all necessary corrections | 1/15/10 |
| | 2-2.1.1* Sprinklers shall be inspected from the floor level annually. Sprinklers shall be free of corrosion, foreign materials, paint, and physical damage and shall be installed in the proper orientation (e.g., upright, pendant, or sidewall). Any sprinkler shall be replaced that is painted, corroded, damaged, loaded, or in the improper orientation. | | C.2 Director of Maintenance will make monthly rounds to ensure proper sprinkler heads and caps are in place and functional. | 1/15/10 |
| | 2-3.3* Alarm Devices. Waterflow alarm devices including, but not limited to, mechanical water motor gongs, vane-type waterflow devices, and pressure switches that provide audible or visual signals shall be tested quarterly. | | D. The Director of Maintenance will report results of Environmental Rounds to Administrator who will discuss results at quarterly QA meeting. | 1/15/10 |
| | 2-4.1.4 A supply of at least six spare sprinklers shall be stored in a cabinet on the premises for replacement purposes. The stock of spare sprinklers shall be proportionally representative of the types and temperature ratings of the system sprinklers. A minimum of two sprinklers of each type and temperature rating installed shall be provided. The cabinet shall be so located that it will not be exposed to moisture, dust, corrosion, or a temperature exceeding 100°F (38°C). | | | |
| | Based on observation, staff interview and record review, 1) recessed/ concealed type sprinkler heads were missing sprinkler caps in the Broadway dining room; 2) there were no spare recessed/ concealed type sprinkler and sidewall | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: TDC121          Facility ID: 0492          If continuation sheet Page 7 of 10

MARQUIS
CONFIDENTIAL
000436

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>335141 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING   01 - MARQUIS CARE CENTER<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>12/07/2009 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>MARQUIS REHABILITATION & NURSING CENTER | STREET ADDRESS, CITY, STATE, ZIP CODE<br>2 MEDICAL PLAZA<br>GLEN COVE, NY 11542 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 062 | Continued From page 7<br><br>type sprinkler heads provided in the facility; 3) one bent pendant type sprinkler deflector was noted in the corridor directly outside of the closet that contained the fire alarm control panel; and 4) required quarterly waterflow tests were not being performed. This was contrary to NFPA 13 & NFPA 25, inspection, testing and maintenance of water-based fire protection systems.<br><br>This resulted in no actual harm with potential for more than minimal harm that is not immediate jeopardy.<br><br>The findings are:<br><br>On 12/4/09 between 8:45am- 2:00pm during the recertification survey, the following were noted:<br><br>1)   Seven of seven recessed/ concealed type sprinkler heads were missing sprinkler caps in the Broadway dining room.<br>2)   No spare recessed/ concealed type sprinkler and sidewall type sprinkler heads were provided. Recessed/ concealed type sprinkler and sidewall type sprinkler heads were noted installed in the facility; examples include but are not limited to the Broadway dining room and the main lobby respectively.<br>3)   One bent pendant type sprinkler deflector was noted in the corridor directly outside of the closet that contained the fire alarm control panel.<br>4)   Required quarterly waterflow tests were not being performed. On 12/4/09 at approximately 12:15pm during record review, the only documented waterflow tests were performed on 4/16/09 & 7/22/09.<br><br>In an interview on 12/4/09 at approximately 10:15am, the Director of Environmental Services | K 062 | | |

MARQUIS
CONFIDENTIAL
000437

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335141 | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | | A. BUILDING   01 - MARQUIS CARE CENTER | |
| | | B. WING _____ | 12/07/2009 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA GLEN COVE, NY 11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| K 062 | Continued From page 8 stated that he will address the issues with the sprinkler company immediately. NFPA 13 NFPA 25 711.2(a)(1), 2000 NFPA 101- 19.7.6, 4.6.12, 9.7.5. | K 062 | | |
| K 069 SS=D | NFPA 101 LIFE SAFETY CODE STANDARD Cooking facilities are protected in accordance with 9.2.3.    19.3.2.6, NFPA 96 This STANDARD is not met as evidenced by: Based on observation, staff interview and record review, it was determined that the facility did not ensure that the kitchen Ansul hood extinguishing system located in the kitchen is visually inspected on a monthly basis. This resulted in no actual harm with the potential for more than minimal harm that is not immediate jeopardy. The findings are: During life safety inspections on 12/04/09 at approximately 11:30AM it was an observation of the inspection/service tag for the kitchen Ansul hood extinguishing system indicated that the system was last serviced on September, 2009 and not visually inspected on a monthly basis after this date. In an interview at this time the facility's Maintenance Consultant stated that the monthly inspections would be implemented. 711.2(a)(1) | K 069 | **K069-NFPA 101 Life Safety Code Standard** A. No residents were affected by the alleged deficient practice. B. All residents have the potential to be affected by alleged deficient practice. C.1 The ansul hood extinguishing system was immediately checked by the Director of Maintenance. C.2 The Director of Maintenance will immediately add the checking of the ansul system to the monthly Environmental Rounds. D. The Director of Maintenance will ensure that the ansul system is checked on a monthly basis via environmental Rounds. The report will be given to the Administrator and results of any finding will be discussed by the Administrator at the quarterly QA meeting. | 12/8/09 12/8/09 12/8/09 12/8/09 12/8/09 |

MARQUIS
CONFIDENTIAL
000438

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 12/16/2009
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 335141 | A. BUILDING    01 - MARQUIS CARE CENTER<br>B. WING _____ | 12/07/2009 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| MARQUIS REHABILITATION & NURSING CENTER | 2 MEDICAL PLAZA<br>GLEN COVE, NY  11542 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| | | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: TDC121          Facility ID: 0492          If continuation sheet Page 10 of 10

MARQUIS
CONFIDENTIAL
000439

# EXHIBIT

# "2"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

CHARLES OKOLIE,

                               **Plaintiff,**

       -against-

MONTCLAIR CARE CENTER INC.
d/b/a MARQUIS REHAB AND NURSING
CENTER, ISAAC LAUFER, and LORI
MAUREL,

                           **Defendants.**

--------------------------------------------------------------x

Civ. No.: CV-11 5389
(JFB)(AKT)

## AFFIDAVIT OF MICHAEL SCARIONE

STATE OF NEW YORK        )
                                 ) SS.:
COUNTY OF NASSAU        )

       MICHAEL SCARIONE, being duly sworn, deposes and says:

       1.     I hold the position of Administrator with Montclair Care Center, Inc.,

d/b/a Marquis Rehabilitation and Nursing Center, named in this litigation as "Montclair Care

Center Inc. d/b/a Marquis Rehab And Nursing Center" (hereinafter referred to as "Marquis" or

the "Center"). In that capacity, I am the custodian for the emergency supply box sign in/sign out

records which Marquis makes and maintains in the ordinary course of its business.

       2.     Marquis maintains its emergency supply box sign in/sign out records on

site at the Center's facility located at 2 Medical Plaza in Glen Cove, New York on a calendar

year basis. At the end of each calendar year, Marquis transfers the emergency supply box sign

in/sign out records for the completed calendar year to a free-standing storage facility located on

Marquis' property.

3.     After the emergency supply box sign in/sign out records are transferred to the storage facility located on Marquis' property, the records are stored in cardboard computer boxes which are placed on shelves within the storage facility.

4.     During Hurricane Sandy, the storage facility located on Marquis' property sustained extensive water damage, including water which leaked into the facility through the roof.  This water damage completely destroyed the emergency supply box sign in/sign out records which were maintained in the facility for calendar year 2009.

5.     No portion of the emergency supply box sign in/sign out records for calendar year 2009 which were destroyed during Hurricane Sandy were salvageable.

6.     Marquis has not made copies of the original emergency supply box sign in/sign out records for calendar year 2009 in any format.  As a result, Marquis has not stored additional copies of the emergency supply box sign in/sign out records for calendar year 2009 in any electronic format or other medium of communication.  In addition, Marquis has not stored any paper copies of the emergency supply box sign in/sign out records for calendar year 2009 at any location other than the storage facility located on Marquis' property in which the original records were destroyed.

_Michael Scarione_
Michael Scarione

Sworn to and subscribed before me
this __8__ day of April, 2014.

_Notary Public_

JEFFREY MARCUS
Notary Public, State of New York
No. 01MA6066320
Qualified in Suffolk County
Commission Expires Nov. 13, 201**7**

2