UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 24 2014 ★

LONG ISLAND OFFICE

Charles Okolie,

Plaintiff.

CV – 11-5389(JFB) (AKT)

**PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF MICHAEL SCARIONE, GRANT DISQUALIFICTION OF NOTARY PUBLIC JEFFREY MARCUS, AND GRANT DISCOVERY SANCTIONS AGAINST JACKSON LEWIS LAW FIRM AND MR. BAKEN COUNSEL FOR DEFENDANT ISAAC LAUFER MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION AND DEFENDANT ISAAC LAUFER MONTCLAIR CARE CENTER d/b/a MARQUIS CENTER FOR NURSING AND REHABILITATION**

Isaac Laufer, Montclair Care Center
d/b/a Marquis Care Center for Nursing
And Rehabilitation, and Lori Maurel
Defendants.

## PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF MICHAEL SCARIONE, GRANT DISQUALIFICTION OF NOTARY PUBLIC JEFFREY MARCUS, AND GRANT DISCOVERY SANCTIONS AGAINST JACKSON LEWIS LAW FIRM AND MR. BAKEN COUNSEL FOR DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION AND DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION

RECEIVED

APR 2 4 2014

EDNY PRO SE OFFICE

1

Plaintiff, Charles Okolie respectfully MOTIONS THIS COURT TO STRIKE AFFIDAVIT OF MICHAEL SCARIONE, GRANT THE DISQUALIFICATION OF NOTARY PUBLIC JEFFREY MARCUS AND GRANT A MOTION FOR DISCOVERY SANCTION AGAINST JACKSON LEWIS LAW FIRM, MR BAKEN COUNSEL FOR  DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION AND DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION , pursuant to FED. R. Civ P. 37 and FED. R. Civ. P. 26.

On March 31, 2014 Magistrate Judge A. Kathleen Tomlinson issued a Memorandum and Order directing Defendants Marquis and Laufer to produce the following supplemental information and documents. **Ruling Regarding Document No. 9: Copy of Sign In/Sign Out book for the Emergency Supply Box for the month of August 2009.** Laufer/Marquis assert that these records were destroyed during Hurricane Sandy. In light of that information, the Court directed counsel for Laufer/Marquis to provide Plaintiff and the Court with an affidavit from the appropriate custodian of the August 2009 emergency supply box sign in / sign out records at Marquis addressing this issue. The custodian must detail when the records existed, how they were stored, what happened to them as a result of Hurricane Sandy, and what records were salvaged, if any. The affidavit must further detail any other location or medium in which the originals or copies of these records were/are kept. The affidavit is to be produced to Plaintiff within fifteen (15) days of entry of the March 31, 2014 Memorandum and Order attached hereto as (EXHIBIT A)

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b). "Relevance" under Rule 26 has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc.,* 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York,* No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing Crosby v. City of New York, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (explaining that Rule 26 must be construed broadly to include any matter that has, or could reasonably have, bearing on any issue that is or may be, in the case); *Barrett v. City of New York,* 237 F.R.D. 39, 40 (E.D.N.Y. 2006) )noting that the information sought "need not be admissible at trial to be discoverable.").

Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center and its Director of Nursing Services relied upon this Document sought; the August 2009 Emergency box Narcotic sign in / sign out record as a pretext in the termination of the Plaintiff, Charles Okolie as cited in the attached EXHIBIT B. (MARQUIS REHABILITATION AND NURSING CENTER RECORD OF CORRECTIVE WARNING dated 8-17-2009.) In this record Jeffrey Marcus (Notary Public for the Affidavit of Michael Scarione) falsified and constructively charges Plaintiff with Resident Neglect for Failure to administer medications as ordered. (citing that Plaintiff did not attempt to obtain the medication from the Emergency control medication box.) *DNS note: "Medication was available in the back up control medication box".* It has

3

always been Plaintiff's contention that the supervisor on duty was asked for Ambien from the Emergency Narcotic Box for August 2009 in which the supervisor replied "No I don't have". The Emergency Narcotic Box record for August 2009 did not possess any control ambien on that evening shift in question and the Emergency Narcotic box record would clearly support Plaintiff's argument, revealing the extend of deceit and evasive practices Defendant Isaac Laufer and Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center and its employee Jeffrey Marcus went in constructively terminating Plaintiff employment. Attached hereto as (EXHIBIT D) is a copy of Defendant Montclair Care Center Incident Report regarding the unavailable Ambien; here it is noted and signed by Jeffrey Marcus (DNS) in Number 6- Action taken, or suggestion to prevent reoccurrence- "PHARMACY CALLED PRIOR AUTHORIZATION REQUIRED". The facility did not posses any Ambien in the Emergency Control box August 2009 on that evening shift in question to administer to any of the patients that did not have any of their own in stock. It is well established that the Defendant Montclair Care Center was deficient when it comes to providing medication to its patient's or residents in a timely manner as referenced in the New York State Department of Health Citation and as conceded by the Defense counsel. Upon Information and belief the pharmacy had notified the Defendant that Patient "JD" Ambien was no longer covered under the insurance plan and needed to be re-evaluated by the primary doctor and changed to another dose or drug that the insurance company would accept and pay on, But until then, they could no longer supply the Ambien.

The duty to preserve relevant evidence in this matter initially arose upon Marquis' receipt of notice of the filing of Plaintiff's EEOC Charge of Discrimination. See Am.

4

Compl. ¶ 11. "In an employment discrimination action, the duty to preserve can arise

from EEOC regulations." *Wood v. Pittsford Cent. Sch. Dist.*, No. 07 Civ. 0892, 2008 WL

5120494, at *2 (2d Cir. 2008) (citing 42 U.S.C. §2000e-8(c); 29 C.F.R. § 1602.14;

*Byrnie*, 243 F. 3d at 109 (citing *Favors v. Fisher*, 13 F. 3d 1235, 1239 (8th Cir. 1994);

*Hicks v Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987)).

Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing

Center and its employee Director of Nursing Services are the custodian for the

Emergency Narcotic supply box sign in / sign out record for August 2009. It's clear that

this August 2009 E-box record would shed more light into this matter and discredit the

Defendant's Answer to Plaintiff, Charles Okolie Amended Complaint, illustrating the

pretext employed in terminated Plaintiff, Charles Okolie for his submission of his Formal

Complaint of Harassment to Defendant Montclair Care Center and its Administrator Jerry

Enella. The non-production and responsive answer to this document request out-weighs

the risk of producing such document, providing the incentive to the Defendant and its

Counsel to misguide this court.

When a motion relies on facts outside the record, affidavits may be used as

evidence. FED. R. Civ. P. 43 (c). An affidavit "must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant is competent to

testify on the matters stated." FED. R. Civ. P. 56 (e) (1). Affidavits containing hearsay do

not satisfy this requirement and must be disregarded. *Dole V. Elliott Travel & Tours, Inc.*,

942 F. 2d 962, 968 (6th Cir. 1991). As such, a court may "strike portions of affidavits

which are not made upon the affiant's personal knowledge, contain inadmissible hearsay

5

[,] or make generalized and conclusory statements." *Hollander V. Am. Cyanamid Co.,* 999 F. Supp. 252, 254 (D. Conn. 1998) (citations omitted).

Upon information and belief Mr. Michael Scarione date of employment of July 2013 in relation to Hurricane Sandy October 28th 2012 is sufficient for the court to strike Mr. Scarione Affidavit. Hurricane Sandy occurred Nine (9) month prior to Mr. Scarione employment date of July 2013. Mr. Michael Scarione would not have been a witness to any, if at all damages that might have been caused by Hurricane Sandy. After examining the affidavit, it is clear that it was derived from hearsay. Hearsay is "a statement, other than one made by the declarant..., offered in evidence to prove the truth of the matter asserted." FED. R. Evid. 801 (c). Affidavit of Michael Scarione is inadmissible hearsay, Furthermore; the court should note that there is a lack of any appropriate factual basis establishing how Michael Scarione is qualified to make the statements and conclusions contained in paragraphs 1 to paragraph 6. Attach hereto as (EXHIBIT C). Apart from Mr. Michael Scarione statement: See Affidavit ¶ 1. "I hold the position of Administrator with Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center, named in this litigation as "Montclair Care Center Inc. d/b/a Marquis Rehab and Nursing Center". In that capacity, I am the custodian for the emergency supply box sign in / sign out records which Marquis makes and maintains in the ordinary course of its business. This statement also displays a deceptive way of misguiding this court and intentionally evading the record in question. Mr. Michael Scarione does not mention August 2009 in that statement, but only mentions the emergency supply box sign in / sign out. Any fact finder would find it troubling and note that this is an attempt to misguide this court. Mr. Michael Scarione cannot have knowledge of and or was the custodian of the Emergency

6

Narcotic supply box sign in / sign out record for August 2009, when upon information and belief his employment with the Defendant Montclair Care Center, Inc., d/b/a Marquis Care Center began July 2013 and Hurricane Sandy occurred upon information and belief October 28th 2012. Therefore, based upon the inadmissible hearsay and lack of supporting factual background, this court should find that Michael Scarione Affidavit be stricken.

## DISQUALIFICTION OF NOTARY PUBLIC JEFFREY MARCUS

The validity of Mr. Jeffrey Marcus's (Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center employee Director of Nursing Services) notarization turns on interpretation of New York State Notary Public Disqualification. Though a person may be eligible to hold the office of notary the person may be disqualified to act in certain cases by reason of having an interest in the case. To state the rule broadly: if the notary is a party to or directly and pecuniarily interested in the transaction, the person is not capable of acting in that case.

A notary's disqualifying interest can result in voiding an instrument that has been notarized by him. In deciding whether to void the instrument, a court should consider whether an improper benefit was obtained by the notary or any party to the instrument, as well as whether any harm flowed from the transaction. To the extent that *Tavenner v. Barrett*, 21 W. Va. 656 (1883), and related cases state or imply the contrary, they are overruled.

Mr. Jeffrey Marcus was an employee of the Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center in the capacity of Director of

7

Nursing Services (*DNS*) named in this litigation as "Montclair Care Center Inc. d/b/a Marquis Rehab and Nursing Center" at the time Plaintiff was employed with the Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center, named in this litigation as "Montclair Care Center Inc. d/b/a Marquis Rehab and Nursing Center". Mr. Jeffrey Marcus was the custodian of the Emergency sign in /sign out Narcotic record for August 2009. Attached hereto as (EXHIBIT B). (MARQUIS REHABILITATION AND NURSING CENTER RECORD OF CORRECTIVE WARNING dated 8-17-2009.). Mr. Jeffrey Marcus is the creator, author and executor of most if not ALL the documents the Defendants rely on to support its pretext.

Once it is shown that a notary has a disqualifying interest in an instrument which he acknowledged, and a suggestion of actual prejudice, unfair dealing, or undue advantage is raised by an adverse party, then the burden shifts to the notary or any party seeking to support the challenged document to demonstrate that no improper benefit was obtained and no harm occurred as a result of the disqualified act.

In some jurisdictions, courts have focused on the notary's interest and have held that if the notary has a financial or beneficial interest in the transaction other than receipt of the ordinary notarial fee, the instrument is invalid. See Loucks *v. Carl Foster & Wards Used Cars,* 334 F.2d 86 (6th Cir. 1964); *Southern Iron & Equip. Co. v. Voyles,* 138 Ga. 258, 75 S.E. 248 (1912); *Lugue v. Von Almen,* 379 Ill. 208, 40 N.E.2d 73 (1941); *Bartlett v. Bolte,* 193 Iowa 1063, 188 N.W. 814 (1922); *Pearl v. Interstate Secs. Co.,* 357 Mo. 160, 206 S.W.2d 975 (1947); *Musselshell Valley Farming & Livestock Co. v. Cooley,* 86 Mont. 276, 283 P. 213 (1929); *Loyal's Auto Exch., Inc. v. Munch,* 153 Neb. 628, 45 N.W.2d 913 (1951); *Armstrong v. Jonas,* 204 N.C. 153, 167 S.E. 562 (1933);

8

The analysis in these cases is somewhat different, but the same result is generally achieved, i.e., voiding the instrument. Typical of the reasoning of this approach is the principle articulated in *Loucks v. Carl Foster & Wards Used Cars*, 334 F.2d at 88, where the court quoted from 1 Am. Jur. 2d Acknowledgments § 16 at 458:

"'[A]n officer or a person otherwise legally authorized to take acknowledgments is not qualified to act where he has a financial or beneficial interest in the proceedings or will acquire such an interest under the instrument to be acknowledged.

The driving force behind the creation of the office of notary public was to prevent fraud. A document that contains a notary public's seal and signature is instinctively given more credibility than an unnotarized document. The basis for credibility of a notarized document is the assumption that the officer who took the oath or acknowledgment was impartial and ensured that no fraud occurred during the creation of the document. When a Notary public exercises the duties and prerogatives of his or her office in cases where he or she has an interest in the matter, the perception of impartiality is destroyed and the desired credibility of the document is lost. Plaintiff requests that the Affidavit of Michael Scarione be stricken. Mr. Jeffrey Marcus Notarization be void and Mr. Jeffrey Marcus be subpoena to a deposition or called to testify.

### GRANT DISCOVERY SANCTIONS AGAINST JACKSON LEWIS LAW FIRM, MR. BAKEN COUNSEL FOR DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION AND DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION

Rule 37 of the Federal Rules of Civil Procedure provides Failure to make Disclosures or to cooperate in Discovery Sanctions. Plaintiff, Charles Okolie has

expended considerable time and resources preparing to defend against an affidavit which has, on its face, no basis in law.  Jackson Lewis Law Firm, Mr. Baken counsel for the Defendant and the Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center and Defendant and the Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center all knew that Michael Scarione's affidavit lacked authenticity and reliability yet still chose to file it with the Court.  In addition, Jackson Lewis Law Firm and Mr. Baken counsel for Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center present misrepresentations and falsified affidavit to the Court in an attempt to misguiding and deceive the court, which makes precluding Defendants herein from offering any evidence upon the trial of this action an appropriate sanction.

Defendants Laufer/Marquis assertion that these records were destroyed during Hurricane Sandy in response to Plaintiff's Doucment No 9 request was submitted in bad faith and as a deceit mechanism to misguide this court. Rule 56(h) of the FED. R. CIV. P. States;  If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**Wherefore,** Plaintiff respectfully requests that this court enter its order :

a.      To strike Affidavit of Michael Sacrione

b.      To Disqualify Notary Public Jeffery Marcus

10

c. To Sanction Jackson Lewis Law Firm and Mr. Baken counsel for Defendant Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center, and Defendant Isaac Laufer and Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center precluding Defendants herein from offering any evidence upon the trial of this action in support of the items set forth in this motion, or in the alternative,

d. Hold in contempt counsel Mr. Baken, Jackson Lewis Law Firm LLP and Defendant Isaac Laufer & Montclair Care Center, Inc., d/b/a Marquis Rehabilitation and Nursing Center.

e. To strike Defendant's answers to Plaintiff Amended complaint.

f. And for such action and relief the court deems just and proper.

Respectfully Submitted,

Dated:    Bellmore, New York
          April 23, 2013

Plaintiff, *Pro Se*
Charles Okolie
253 Oak Street
Bellmore, NY 11710

Mailed to:

Attorney for Defendants Isaac Laufer and
Montclair Care Center, Inc. d/b/a Marquis Rehabilitation
And Nursing Center
Scott T. Baken
Attorney at Law
Jackson Lewis LLP
One North Broadway
White Plains, NY 10601-2329

Attorney for Defendant Lori Maurel
Christopher Thompson
36 Davidson Lane East
West Islip, New York 11795

# EXHIBIT

# "A"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
CHARLES OKOLIE,

                          *Pro Se* Plaintiff,

                - against -

ISAAC LAUFER, MONTCLAIR CARE
CENTER INC. d/b/a Marquis Rehab and
Nursing Center, and LORI MAUREL,

                          Defendants.
-------------------------------------------------------X

                          **MEMORANDUM**
                          **AND ORDER**

                    CV 11-5389 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

       *Pro se* Plaintiff Charles Okolie ("Plaintiff") brings this action against Defendants Isaac

Laufer ("Laufer"), Montclair Care Center Inc. d/b/a/ Marquis Rehab and Nursing Center

("Marquis") and Marquis employee Lori Maurel ("Maurel") alleging sexual harassment,

discrimination on the basis of race and color, and retaliation under Title VII, the New York State

Human Rights Law, and 42 U.S.C. § 1981.  Laufer is alleged to be the principal owner of Marquis.

Plaintiff, an African-American male, was formerly employed at Marquis as a Licensed Practical

Nurse.  Plaintiff alleges that co-worker Maurel subjected him to "unwanted and inappropriate

sexually related" comments and behavior during his employment with Marquis.  Plaintiff reports

that Marquis and Laufer failed to properly investigate his complaints of workplace harassment

until, ultimately, he was terminated in retaliation for voicing his concerns about this conduct.

       Before the Court is Plaintiff's motion to compel responses to his Second Request for

Production of Documents from Defendants Laufer and Marquis.  Plaintiff contends that the

responses are deficient. *See* Plaintiff's Affidavit in Support of Order to Show Cause to Compel

("Pl.'s Mot.") [DE 67]. Counsel for Laufer and Marquis oppose the motion to compel, arguing

that they have adequately responded to Plaintiff's document requests. *See* Defendants' Opposition

Letter ("Defs.' Opp.") [DE 68]. For the reasons set forth below, Plaintiff's motion to compel is

GRANTED, in part, and DENIED, in part.

**II.    BACKGROUND**

    **A.    The Amended Complaint**

The instant claims were first asserted by Plaintiff in an October 20, 2009 Charge of

Discrimination filed against Marquis with the Equal Employment Opportunity Commission

("EEOC"). *See* Amended Complaint ("Am. Compl.") ¶ 11 [DE 4]. On August 4, 2011, the

EEOC issued Plaintiff a "Dismissal and Notice of Rights" letter. *Id.* ¶ 12. The original pleading

was filed with the Court on November 3, 2011. *See* Complaint [DE 10].

In his February 14, 2012 Amended Complaint, Plaintiff states that he commenced

employment with Marquis as an LPN on or about February 20, 2008. Am. Compl. ¶ 13. Plaintiff

maintains that during his employment at Marquis, he was discriminated against on the basis of his

race, color, and sex with respect to the terms, conditions and privileges of his employment. *Id.*

¶ 15. Moreover, Plaintiff asserts that while he worked at Marquis, he "opposed, objected to and/or

complained of unlawful employment discrimination based on race, color, sex and unlawful

employment practices." *Id.* ¶ 16. According to the Plaintiff, however, the Defendants failed to

investigate or take any remedial action in response to Plaintiff's opposition to "objections and/or

complaints about Defendants' unlawful discrimination." *Id.* ¶ 17. Instead, the Defendants

unlawfully retaliated against Plaintiff for "opposing, objecting to and/or complaining of unlawful

discrimination, regarding terms, conditions and privileges of employment and employment opportunities." *Id.* ¶ 19. Plaintiff claims he was ultimately discharged "because he engaged in such protected conduct." *Id.*

Defendant Maurel is alleged to have made "unwanted and inappropriate sexually related comments and engaged in sexually related behavior" towards the Plaintiff. Am. Compl. ¶ 20. For example, Plaintiff states he was subjected to "unrequested neck and shoulder massages." *Id.* When these comments and actions were rejected by Plaintiff, Defendant Maurel "engaged in verbal abuse and harassment which led to Defendants participating in a pattern and practice of workplace retaliation against Plaintiff." *Id.* By way of example, Plaintiff asserts that on "many occasions, Defendant Maurel threatened Plaintiff that if he did not do what she wanted him to do, that she would tell her personal friend, Defendant Laufer, to terminate Plaintiff's employment." *Id.* ¶ 21.

Plaintiff, furthermore, alleges that Maurel "engaged in inappropriate and unwarranted sexual behavior towards Plaintiff by wearing low cut blouses that exposed her cleavage and breasts making Plaintiff feel intimidated, especially when Defendant Maurel would attempt to sit very close to him and/or when leaning over Plaintiff's desk to speak to him." Am. Compl. ¶ 22. These actions made it difficult for Plaintiff to perform his job. *Id.*

When he reported the foregoing conduct to Jerome Enella, the Administrator of the Nursing Home, Plaintiff contends that Enella failed to investigate or take any remedial action in response to his complaints. Am. Compl. ¶ 23. Rather, Plaintiff states that Enella "subjected Plaintiff to verbal abuse and participated in a pattern and practice of workplace retaliation against Plaintiff." *Id.* In addition to Enella, Plaintiff alleges that he was also subjected to "verbal abuse

and intimidation" in a "pattern of workplace retaliation" initiated by other Marquis employees, including Melanie Estepa and Jeffrey Marcus. *Id.* ¶¶ 24-25.

Plaintiff also identifies other instances of "workplace retaliation and harassment." Am. Compl. ¶ 26. Plaintiff states that he was "reassigned to another unit" at Marquis where he "was denied the proper supplies, documentation and medications" to provide proper services to the residents at the facility. *Id.* Although Defendants were allegedly notified of these "deficiencies," they took no steps to cure them. *Id.* Thereafter, when Plaintiff notified the "proper authorities/agencies responsible for the regulation of these nursing services, Defendants engaged in a pattern and practice of workplace retaliation and harassment against Plaintiff." *Id.*

In a further instance of workplace harassment and retaliation, according to Plaintiff, the Defendants reported him to the New York State Department of Health ("DOH") "in an attempt to have Plaintiff stripped of his nursing license." Am. Compl. ¶ 27. Plaintiff states that the DOH conducted an investigation and determined that there "were no infractions committed by Plaintiff and dismissed Defendants' allegations." *Id.* Further, Defendants retaliated against and harassed the Plaintiff by "interfering with his employment [with] prospective employers." *Id.* ¶ 28.

According to Plaintiff, Defendant Laufer was "employed in a position of authority and in a managerial capacity and committed unlawful conduct" against the Plaintiff. Am. Compl. ¶ 33. The Defendants, according to Plaintiff's contentions, "ratified, approved, and/or condoned the unlawful conduct of the Defendant Laufer, as well as the other Defendants' employees and the representatives of the Defendants against" the Plaintiff." *Id.*

4

**B.      Relevant Procedural History**

On March 8, 2013, Judge Bianco heard oral argument on the motion for judgment on the

pleadings filed by Defendants Laufer and Marquis as well as a motion to dismiss filed by

Defendant Maurel. *See* DE 56, 57.  On that same day, Judge Bianco issued an Order stating:

> For the reasons set forth in detail on the record today, the motion for
> judgment on the pleadings filed by defendants Isaac Laufer and
> [Marquis], and the motion to dismiss filed by defendant Lori Maurel
> are both granted in part and denied in part.  Specifically, plaintiff's
> claims under the Nassau County Administrative Code and plaintiff's
> claims against the individual defendants under Title VII are
> dismissed, but all of plaintiff's other claims may proceed.

DE 57.

Following Judge Bianco's decision on the foregoing motions, the parties appeared for a

Status Conference before this Court on April 11, 2013.  DE 62.  The Court noted, preliminarily,

that in light of Judge Bianco's decision, the claims against the individual defendants under

Title VII and the administrative clams under the Nassau County Code were dismissed. *Id.* ¶ 1.

Plaintiff's Section 1981 claim and the NYSHRL claim were proceeding in the litigation. *Id.*

Moreover, the Court acknowledged that "[t]he parties have not made much progress with

discovery to date, although defendant has served a deficiency letter and the parties have had some

discussions regarding the letter." *Id.*  The Court then addressed outstanding discovery issues

raised by both the Plaintiff and Defendants. *Id.* ¶¶ 2-5.  In pertinent part, the Court noted that

> Plaintiff is not satisfied with the response he received to his
> document request from defendants.  Plaintiff may send defendants'
> counsel a deficiency letter within one week.  The Court will take this
> issue up at the May 17 conference.

*Id.* ¶ 5.

5

The parties reconvened for the Discovery Status Conference on May 17, 2013. DE 64. As referenced in the earlier April 11, 2014 Status Conference, the Court addressed the discovery deficiencies pointed out by Plaintiff, as follows:

> During the April 11 conference, the plaintiff indicated that he was not satisfied with responses to his document requests. At that time, I gave plaintiff one week to file a deficiency letter with defendants' counsel. Today, I was advised by Attorney Baken that instead of a deficiency letter, the plaintiff served another set of demands on defendants. We discussed one example from that additional list of demands. Plaintiff apparently asked for the list of all employees employed by the defendant from the year 2000 on. I explained to the plaintiff why... this request was overly broad both in terms of its scope as well as the time frame. Plaintiff will provide further narrowing information to defendants' counsel.
>
> ***
>
> Pursuant to the Federal Rules, defendants have until June 3 to respond to the additional demands. I further directed this morning that once plaintiff has received those responses, the parties will have from June 4-June 18 to meet and confer and attempt to resolve any disputes regarding these responses. If they are unable to resolve all the issues, then the plaintiff may proceed to file an appropriate motion to compel, but must do so by June 25, 2013 or his right to do so will be deemed waived.

*Id.* ¶ 2.

### C.    The Instant Motion to Compel

On June 24, 2013, Plaintiff filed the instant motion as an "Order to Show Cause to Compel." DE 66. On June 25, 2013, this Court issued an Electronic Order deferring a ruling on the motion to compel. *See* June 25, 2013 Electronic Order. As explained in the Electronic Order, "an Order to Show Cause is not the appropriate procedural mechanism for the relief sought by plaintiff." *Id.* As such, "[t]he Court will therefore treat the submission as a motion to compel and

6

defendants' opposition is due in 3 business days." *Id.* Finally, the Court held that "[a]fter reviewing defendants' opposition, the Court will consider whether a hearing is necessary." *Id.*

In his motion, Plaintiff seeks to compel responses to Document Request Nos. 6, 9, 12, 16, 26, and 30 from counsel for Laufer and Marquis ("Laufer/Marquis"). Pl.'s Mot. ¶¶ 9-10. In their opposition, Laufer/Marquis argue that Plaintiff's motion should be denied in light of their supplemental discovery productions of June 7 and June 10, 2013 which followed the parties' Court-ordered conference pursuant to Local Civil Rule 37.3. Defs.' Opp. at 1. Laufer/Marquis contend that their responses satisfy their discovery obligations as to all of Plaintiff's "Revised Discovery Requests." *Id.* On July 8, 2013, Plaintiff filed a reply arguing that his document requests are "clearly relevant" and that Laufer/Marquis are "non-responsive" in demonstrating an "overall pattern to stonewall discovery with [the] clear effect of impeding Plaintiff's ability to prepare adequately for a trial." *Id.* at 2. As such, Plaintiff requests that the Court grant the motion to "comply with Discovery Requests as modified by Plaintiff," or, alternatively, "to strike [Laufer/Marquis'] answers and preclude Defendant herein from offering any evidence upon the trial of this action." *Id.*

## III.   LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b). "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *Oppenheimer Fund, Inc.*, 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting

7

that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York*, No. 08

Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York*,

269 F.R.D. 267, 282 (S.D.N.Y. 2010) (explaining that Rule 26 must be construed broadly to

include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in

the case); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the

information sought "need not be admissible at trial to be discoverable.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must

make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."

*Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013)

(citing *Wells Fargo Bank, N.A. v. Konover*, No. 05 Civ. 1924, 2009 WL 585430, at *5 (D.Conn.

Mar. 4, 2009); *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12,

1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to

manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir.

2012) (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*,

2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery

disputes.").

## IV.   DISCUSSION

Plaintiff reports that, in accordance with the May 17, 2013 Civil Conference Minute Order,

he "attempted to resolve these disclosure issues with the Defendant on multiple occasions as

directed by the court in an attempt to resolve any dispute regarding their responses." Pl.'s Mot.

¶ 6. However, Plaintiff states he was compelled to file the instant motion because as of June 24,

2013, he had "not received any additional responses either to amend or to provide any additional

8

responsive answers except for a response dated June 7, 2013 in which Defendant Montclair [C]are Center d/b/a Marquis Care Center for Nursing and Rehabilitation once again failed to provide adequate responses to Plaintiff's demands as directed by the [C]ourt." *Id.* ¶ 7. In Plaintiff's view, Laufer/Marquis failed to comply with the Court's directive to produce all documents. *Id.* ¶ 8.

Laufer/Marquis maintain that their June 7 and June 10, 2013 discovery responses collectively "provided substantive responses to all of the Revised Discovery Requests to which Plaintiff agreed during the parties' June 3 and June 4, 2013 teleconferences." Defs.' Opp. at 1. Laufer/Marquis dispute Plaintiff's representation that the Court directed Laufer/Marquis "to produce all documents as in regards to Plaintiff's document requests." *Id.* at 1 n.1. Laufer/Marquis argue that "[r]ather, during the parties May 17, 2013 discovery status conference, the Court agreed with defense counsel that many of Plaintiff's April 29, 2013 Discovery Requests were overbroad, and directed the parties to confer and attempt to agree on limitations as to the scope of the Requests." *Id.* Laufer/Marquis explain that, although the Court directed them to respond to Plaintiff's additional demands by June 3, 2013, the "parties were unable to discuss possible limitations on Plaintiff's Discovery Requests until June 3, 2013." *Id.* In light of these circumstances, Plaintiff consented to extend Laufer/Marquis' time to respond to those additional discovery demands from June 3, 2013 to June 7, 2013. *Id.* Notwithstanding this consent, the Court notes that Laufer/Marquis were required to seek leave for an extension of time from the Court, no matter how brief the extension needed. As counsel was advised at the Initial Conference, "[a]ll requests for extensions or modifications of any deadlines stated in these Orders must be made by letter motion to the Court in advance of the expiration of the deadline." DE 17 ¶ 11.

The Court now assesses whether the responses provided by Laufer/Marquis are deficient. *See* Defendant Montclair Center Inc. d/b/a Marquis Care Center's Responses and Objections to Plaintiff's Second Request for Production of Documents annexed as Ex. "A" ("Defs.' Responses") to Pl.'s Mot. [DE 67]. Where applicable, any responses which have been revised by the Plaintiff following the parties' meet and confer are noted below.

> A. **Revised Document Request No. 6**: Any and all documents in relation to citations, violations and or deficiencies issued to Defendant Montclair Care Center Inc. d/b/a Marquis Care Center from October 2006 to October 2009 by the licenses noted in (5).

Defs.' Responses at 11. In response to Request No. 6, Laufer/Marquis states, "upon information and belief," that Marquis was "cited by the [DOH] 2008 annual survey, for failing to give medication to a patient in a timely manner." *Id.* Continuing on, Laufer/Marquis stated that they "do not possess the New York State Department of Health's 2008 annual survey." *Id.* Furthermore, Laufer/Marquis referred Plaintiff to his personnel file which includes copies of a July 15, 2009 educational intervention which was given in response to a DOH citation. *Id.* Laufer/Marquis also referred Plaintiff to an August 14, 2009 memorandum from Jeffrey Marcus to Jerry Enella referring to the DOH citation, both of which are also found in Plaintiff's personnel file. *Id.* Three days after these responses were provided, Laufer/Marquis sent Plaintiff a letter on June 10, 2013 confirming that the 2008 DOH annual survey was, in fact, provided to the Plaintiff in Defendants' original May 1, 2012 production. *See* 6/10/13 Letter from Laufer/Marquis to Plaintiff [DE 68-2]. Laufer/Marquis also pointed out to Plaintiff the relevant portions of the survey in which Marquis was "cited for failing to provide medication to a patient in a timely

10

manner." *Id.* Plaintiff argues that Laufer/Marquis' response to Request No. 6 is "evasive and incomplete." Pl.'s Mot. ¶ 9.

The Court finds Laufer/Marquis' response deficient in light of the allegations set forth in the Amended Complaint. As part of the retaliation alleged in the Amended Complaint, Plaintiff maintains that he was "reassigned to another unit" at Marquis where he "was denied the proper supplies, documentation and medications to provide services to the residents" at the facility as required by his nursing license. Am. Compl. ¶ 26. The 2008 DOH annual survey sheds light on those allegations since, as counsel for Laufer/Marquis concedes, Marquis was cited for failing to provide a patient with medication in a timely fashion. This evidence provides some support for Plaintiff's claims concerning the practices he alleges Marquis was engaged in during the period at issue. Plaintiff also asserts that "[a]lthough Defendants were allegedly notified of these 'deficiencies,' they were not cured." *Id.* ¶ 26. When Plaintiff notified the "proper authorities/agencies responsible for the regulation of these nursing services, Defendants engaged in a pattern and practice of workplace retaliation and harassment against Plaintiff." *Id.* Taking these allegations as a whole, and noting the broad scope of discovery provided for in Rule 26, the Court directs Laufer/Marquis to supplement their production to include the 2009 DOH Annual Survey. However, the Court does not find production of the 2006 or 2007 DOH annual surveys necessary since Plaintiff only commenced employment with Marquis in February 2008.

> **B.** **Document Request No. 9**: Copy of Sign In/Sign Out Book for the Emergency Supply Box for the month of August 2009 from Defendant Montclair Care Center Inc. d/b/a Marquis Care Center.

In response to Request No. 9, Laufer/Marquis state that they "do not possess any documents which are responsive." Defs.' Responses at 14. Further, Laufer/Marquis explain that

11

the "Sign In/Sign Out book for the requested period was destroyed due to flooding in Marquis'

storage facility during Hurricane Sandy." Defs.' Opp. at 2. Laufer/Marquis "assume[] Plaintiff

appreciates this occurrence, in light of Plaintiff's representation during the parties' May 17, 2013

discovery that he also lost a number of relevant documents due to flooding from Hurricane

Sandy." *Id.* In his reply, Plaintiff points out that Laufer/Marquis' claims that these records were

destroyed during Hurricane Sandy are "at best, suspect in that such claims were never made to the

EEOC or to this Court when the case began." Pl.'s Reply at 1. Furthermore, Plaintiff argues,

"upon information and belief Defendants are obligated to maintain such vital records or

documentation as required by New York State law." *Id.*

"While a litigant is under no duty to keep or retain every document in its possession[,] it is

under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is

reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be

requested during discovery and/or is the subject of a pending discovery request." *Zubulake v. UBS

Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (internal quotations and alterations omitted);

*see Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009). The duty to preserve

relevant evidence in this matter initially arose upon Marquis' receipt of notice of the filing of

Plaintiff's EEOC Charge of Discrimination. *See* Am. Compl. ¶ 11. "In an employment

discrimination action, the duty to preserve can arise from EEOC regulations." *Wood v. Pittsford

Cent. Sch. Dist.*, No. 07 Civ. 0892, 2008 WL 5120494, at *2 (2d Cir. 2008) (citing 42 U.S.C. §

2000e-8(c); 29 C.F.R. § 1602.14; *Byrnie*, 243 F.3d at 109 (citing *Favors v. Fisher*, 13 F.3d 1235,

1239 (8th Cir. 1994); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987)). In this

context, however, Plaintiff has not clearly articulated why these documents are relevant to his

12

claims in the first instance. In his motion, Plaintiff simply demands these records without providing a proper rationale for their production. As a result, the Court will not compel Laufer/Marquis to produce these documents at this time. *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 319 (S.D.N.Y. 2003) (good cause not shown in motion to compel discovery of material relevant only to subject matter of action where movant did not make "any showing of need"); *RLS Assoc., LLC v. United Bank of Kuwait, PLC*, No. 01 Civ. 1290, 2003 WL 1563330, *8 (S.D.N.Y. March 26, 2003) (good cause not shown in motion to compel discovery of material relevant only to subject matter of action where movant did not show that "production would serve the reasonable needs of the action").

Moreover, Laufer/Marquis assert that these records were destroyed during Hurricane Sandy. In light of this information, the Court is directing counsel for Laufer/Marquis to provide Plaintiff and the Court with an affidavit from the appropriate custodian of the August 2009 emergency supply box sign-in/sign out records at Marquis addressing this issue. The custodian must detail when the records existed, how they were stored, what happened to them as a result of Hurricane Sandy, and what records were salvaged, if any. The affidavit must further detail any other location or medium in which the originals or copies of these records were/are kept. The affidavit is to be produced to Plaintiff within fifteen (15) days of entry of this Order.

      **C.**    **Revised Request No. 12**: Copies of all annual performance evaluations for Lori Maurel, Christine Kiel, Eric McQuiston, Randi Glasgow, Sandrine Etienne, and Jessica Rodriguez from October 2006 to October 2009.

Defs.' Responses at 19. As a preliminary matter, Marquis represents that it did not conduct any "annual performance evaluations" between October 2006 and October 2009. Defs.' Opp. at 2. Notwithstanding this representation, counsel for Laufer/Marquis has produced, within its June 29,

13

2012 Document Responses, "copies of personnel documents related to counseling and/or

disciplinary measures received by the individuals named in Plaintiff's Revised Request No. 12."

*Id.* To the extent that Marquis conducted *any* performance reviews/evaluations (not just "annual

performance evaluations"), the Court is directing counsel to produce them, subject to the

Stipulation and Order of Confidentiality. *See* DE 25. If there are no reviews or evaluations other

than the "personnel documents" referenced above by Laufer/Marquis, then counsel is directed to

provide the Court with a letter confirming the same, with a copy to Plaintiff's counsel.

> **D.**   **Request No. 16**: Copy of Personnel File of Elliot Aryeh who
> was an employee of Defendant Montclair Care Center Inc.
> d/b/a Marquis Care Center.   Including all copies of
> application for employment.

Defs.' Responses. at 23. With respect to this request, Laufer/Marquis responded to Plaintiff that,

"[u]pon information and belief, [Marquis] terminated Mr. Aryeh's employment due to

performance issues." *Id.* In addition, Laufer/Marquis provided Plaintiff with Mr. Aryeh's last

known address. *Id.* In their opposition, Laufer/Marquis explain that the parties met and conferred

concerning this request and agreed that Laufer/Marquis would provide to Plaintiff Mr. Aryeh's last

known address and information concerning the reasons for his separation from Marquis. Defs.'

Opp. at 68. As Laufer/Marquis point out, Mr. Aryeh's employment with Marquis was between

August 24, 2009 and December 30, 2009 - - the entirety of which followed Plaintiff's termination

from service with Marquis. Defs.' Opp. at 3. As a result, the Court finds no relevance to the

production of Mr. Aryeh's application for employment and personnel file, nor has any been

provided by the Plaintiff. Therefore, the Court will not require counsel for Laufer/Marquis to

produce anything further here.

> **E.**   **Revised Request No. 26**: All documents that Defendant
> Montclair Care Center Inc. d/b/a Marquis Care Center

> received from the United States [EEOC], the New York State
> Division of Human Rights and/or any other administrative
> agency in response to any administrative charges and/or
> complaints filed by any former or current employees of
> Defendant Montclair Care Center Inc d/b/a Marquis Care
> Center between October 2006 and October 2009, including
> the date on which the complaint was made; the nature of the
> complaint; the response of the Defendant Care Center Inc.
> d/b/a Marquis Care Center to the complaint; the agency's
> investigative findings regarding each complaint and the final
> disposition or current status of each complaint.

Defs.' Responses at 35. Laufer/Marquis objected to this request for a number of reasons, including

its overbreadth, prejudice, and irrelevance. *Id*. at 35-36. To the extent that these complaints and

findings/decisions fall outside the scope of Plaintiff's claims insofar as they seek documents pre-

dating Plaintiff's hire, relate to any position other than LPN, pertain to any facility other than

Marquis, or concern any allegations other than that involving race, color, sex discrimination or

retaliation, they are irrelevant. In their June 29, 2012 responses, Laufer/Marquis assert they have

already produced "copies of documents related to an administrative complaint alleging sexual

harassment which a former employee filed with the [New York State Division of Human Rights]

in 2009." Defs.' Opp. at 3. The Court points out that a *pro se* pleading is to be given a broad

reading. *See Chang v. United States*, 250 F.3d 79, 86 n.2 (2d Cir. 2001) (applying "a liberal

standard of interpretation to *pro se* pleadings"); *Nials v. Bank of America*, No. 13 Civ. 5720, 2014

WL 1174504 (S.D.N.Y. Mar. 21, 2014) ("[A] *pro se* complaint is entitled to a particularly liberal

reading, and is construed to raise the strongest arguments that [it] suggest[s].") (internal quotations

and citations omitted); *Olympicorp Intern., LLC v. Farm Rich Foods, LLC*, No. 13 Civ. 4094, 2013

WL 6194238, at *2 (E.D.N.Y. Nov. 25, 2013) ("When a plaintiff proceeds without legal

representation, the district court must regard that plaintiff's complaint in a more liberal light,

15

affording the pleadings of a *pro se* litigant the strongest interpretation possible.") (internal citations omitted). To the extent that the sexual harassment claim can be read as one encompassing a hostile work environment based on sex (or race or color for that matter), Plaintiff would be entitled to see copies of complaints by other employees who made the same or similar complaints. The Court is directing counsel for Laufer/Marquis to produce any documents which come within the parameters of this Order for the period covering January 1, 2008 until the date of Plaintiff's termination on August 19, 2009.

> **F.** **Revised Request No. 30**: A copy of any loan agreements/promissory notes between Montclair Care Center Inc. d/b/a Marquis Care Center and any of Marquis' employees which originated between October 2006 and October 2009.

Defs.' Responses at 42. Finally, the Court will not compel Laufer/Marquis to respond to Revised Request No. 30. Laufer/Marquis objected to this request, explaining that the limited probative value of the "collateral information or documentation sought is far outweighed by the risk of potential prejudice [Marquis] could suffer as a result of producing the information or documentation in connection with this action." *Id.* Plaintiff argues that these concerns are addressed by the parties' "so-ordered" confidentiality stipulation and thus documents responsive to Revised Request No. 30 must be produced. *See* DE 25; *see also* May 7, 2012 Electronic Order. However, the Court is not required to direct that documents be produced merely because the parties entered into a confidentiality stipulation. Plaintiff here fails to meet even the broad threshold requirement of relevance for the purported loan agreements/promissory notes by failing to explain why they are necessary. As such, the Court will not compel the production of these documents which are not in the possession or control of Laufer/Marquis. *See Shcherbakovskiy v.*

16

*Da Capo Al Fine, Ltd.* 490 F.3d 130, 138 (2d Cir. 2007) (explaining that "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain.") (internal citations omitted); *Raza v. City of New York*, No. 13 Civ. 3448, 2013 WL 6177392, at *13 (E.D.N.Y. Nov. 22, 2013) ("Defendants cannot be compelled to produce documents or information that they do not possess.") (internal citations omitted); FED. R. CIV. P. 34(a) (any party may serve on any other party a request to produce documents which are in the "*possession, custody or control*" of the party upon whom the request is served) (emphasis added).[1]

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel discovery is GRANTED, in part, and DENIED, in part, to the extent set forth in this Order. The Court has a set an in-person Status Conference for April 30, 2014 at 12 p.m. to address all outstanding discovery issues and to implement a Final Scheduling Order.

Counsel for Defendants Laufer and Marquis is directed to serve a copy of this Order on the *Pro Se* Plaintiff forthwith via first-class mail and e-mail (if Laufer/Marquis has an e-mail address for Plaintiff) and to file proof of service on ECF.

SO ORDERED.

Dated: Central Islip, New York
      March 31, 2014

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

[1]     Plaintiff also seeks "Documentation from Defendant in regards to the inventory of narcotics in the facility on the date of the incident involving Plaintiff" in his motion to compel discovery. Pl.'s Mot. ¶ 10(b). However, this request was not at issue in the Plaintiff's Second Request for Production of Documents from Defendant Marquis served on April 29, 2013 which is the subject of this motion. *See* Pl.'s Mot., Ex. "C." As such, this request was not discussed during the Court-ordered Rule 37.3 conference which the parties held on June 3 and June 3, 2013. Consequently, the Court will not require Laufer/Marquis to respond to this request at this time.

# EXHIBIT

# "B"



# MARQUIS

## REHABILITATION and Nursing Center

## *RECORD OF CORRECTIVE WARNING*

Date: __8/17/09__

Name: _____Charlie Okolie_____     D.O.E. _____3/16/09_____

Dept. _____NSG_____     Job Title: _____LPN_____

Any Prior Warnings? _X_ Yes     _____ No

If yes: Type of last warning: _____Oral Warning_____
Cause for last warning: _____Medication Omission (9/27 – 9/28)_____
Date of last warning: _____10/2/09_____

Rule(s) Violated _____Resident Neglect_____     (Failure to administer medications as ordered)

Details of Above (facts, including date & time) _____On 8/12/09 Mr. Okolie failed to administer a dose of Ambien to a resident as per MD orders. Mr. Okolie did not follow procedure for handling a missing medication as per the in-service he received on 7/15/09 and did not attempt to obtain the medication from the emergency control medication box as per in-service he received 5/28/09. Mr. Okolie wrote an addendum nurses' notes admitting his neglect by writing *"line drawn on MAR represents to be Admin. When available on next dose-8/13/09,9PM"*. In other words Mr. Okolie did not follow the standards of care by inferring **waiting for medication, no action taken.** *DNS note: Medication was available in the back up control medication box.*_____

Action Taken This Warning:
    a.  Oral Warning   _____
    b.  Written Warning   _____
    c.  Suspension   ___X___    # of Work Days   _____one (1) 8/16/09_____
    d.  Discharge   ___X___    Date   _____August 18, 2009_____

Recommendation for Improvement _____Employee Terminated_____

Future Action _____Employee Terminated_____

Supervisor's Signature _____     Date _7/17/09_

Employee's Comments _____

Employee's Signature _____     Date _____

Was a Union Delegate Present? ___✓___ Yes _____ No _____ N/A
If yes, name _____

Was a copy given to employee? ✓ Yes _____ No

Reviewed _____

Signature _____     Title _Director_ Date _8/19/09_
Witness _____

# EXHIBIT

## "C"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

CHARLES OKOLIE,

                              Plaintiff,

       -against-

MONTCLAIR CARE CENTER INC.
d/b/a MARQUIS REHAB AND NURSING
CENTER, ISAAC LAUFER, and LORI
MAUREL,

                    Defendants.

-------------------------------------------------------------x

Civ. No.: CV-11 5389
(JFB)(AKT)

## AFFIDAVIT OF MICHAEL SCARIONE

STATE OF NEW YORK      )
                            ) SS.:
COUNTY OF NASSAU      )

MICHAEL SCARIONE, being duly sworn, deposes and says:

1.    I hold the position of Administrator with Montclair Care Center, Inc.,

d/b/a Marquis Rehabilitation and Nursing Center, named in this litigation as "Montclair Care

Center Inc. d/b/a Marquis Rehab And Nursing Center" (hereinafter referred to as "Marquis" or

the "Center"). In that capacity, I am the custodian for the emergency supply box sign in/sign out

records which Marquis makes and maintains in the ordinary course of its business.

2.    Marquis maintains its emergency supply box sign in/sign out records on

site at the Center's facility located at 2 Medical Plaza in Glen Cove, New York on a calendar

year basis. At the end of each calendar year, Marquis transfers the emergency supply box sign

in/sign out records for the completed calendar year to a free-standing storage facility located on

Marquis' property.

3.     After the emergency supply box sign in/sign out records are transferred to the storage facility located on Marquis' property, the records are stored in cardboard computer boxes which are placed on shelves within the storage facility.

4.     During Hurricane Sandy, the storage facility located on Marquis' property sustained extensive water damage, including water which leaked into the facility through the roof.  This water damage completely destroyed the emergency supply box sign in/sign out records which were maintained in the facility for calendar year 2009.

5.     No portion of the emergency supply box sign in/sign out records for calendar year 2009 which were destroyed during Hurricane Sandy were salvageable.

6.     Marquis has not made copies of the original emergency supply box sign in/sign out records for calendar year 2009 in any format.  As a result, Marquis has not stored additional copies of the emergency supply box sign in/sign out records for calendar year 2009 in any electronic format or other medium of communication.  In addition, Marquis has not stored any paper copies of the emergency supply box sign in/sign out records for calendar year 2009 at any location other than the storage facility located on Marquis' property in which the original records were destroyed.

_____
Michael Scarione

Sworn to and subscribed before me
this __8__ day of April, 2014.

_____
Notary Public

JEFFREY MARCUS
Notary Public, State of New York
No. 01MA6066320
Qualified in Suffolk County
Commission Expires Nov. 13, 20 __7__

2

# EXHIBIT "D"

1. RESIDENT NAME: *J*     ROOM #: *508*

2. TYPE OF INCIDENT:

    ✓ OMISSION OF A DOSE       ___ GIVEN WITHOUT DOCTOR'S ORDER
    ___ INCORRECT DOSE           ___ GIVEN PAST STOP ORDER DATE
    ___ INCORRECT DRUG           ___ DRUG NOT AVAILABLE (LOST ETC.)
    ___ INCORRECT PATIENT       ___ CHARTING OMISSION
    ___ INCORRECT FREQUENCY    ✓ CHARTED INCORRECTLY
                               ___ OTHER: _____

3. DRUG INVOLVED (NAME FORM & STRENGTH): *Ambien 12.5 mg PO QHS.*

4. DESCRIPTION OF INCIDENT, DATE, TIME & LOCATION: *Res didn't Recieve 9pm Dose. LPN Didn't Follow Procedure for handling Missing medications. 8/12/09 9pm RM508*

5. IMMEDIATE ACTION TAKEN: *N/A*    N/A EXPLAIN: *Hs. dose for Sleep*

6. ACTION TAKEN, OR SUGGESTION TO PREVENT REOCCURRENCE: *Pharmacy Called prior Authorization Required*

7. NURSE'S NAME: *Charlie Okolie*

8. A.   PHYSICIAN'S NAME: *Nogue.*
    B.   WAS RESIDENT SEEN BY PHYSICIAN?   ✓ NO      YES

9. REPORT SUBMITTED BY: *[signature]*    DATE: *8/13/09*
           SIGNATURE & TITLE

10. PHYSICIAN'S STATEMENT: _____

11. PHYSICIAN'S SIGNATURE: _____ DATE: _____
     REVIEWED BY:
     PHARMACY CONSULTANT: _____ DATE: _____
     NURSING: *[signature]* DATE: *8/13/09*
               TITLE
     ADMINISTRATION: _____ DATE: _____
     MEDICAL DIRECTOR: _____ DATE: _____

THIS INCIDENT HAS BEEN DISCUSSED WITH ME AND I HAVE BEEN TAUGHT THE CORRECT PROCEDURE
SIGNATURE: _____     DATE: _____

COPY

MARQUIS
CONFIDENTIAL
000182

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**Charles Okolie,**

                    **Plaintiff.**

**CV – 11-5389(JFB) (AKT)**

**PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF MICHAEL SCARIONE, GRANT DISQUALIFICTION OF NOTARY PUBLIC JEFFREY MARCUS, AND GRANT DISCOVERY SANCTIONS AGAINST JACKSON LEWIS LAW FIRM AND MR. BAKEN COUNSEL FOR  DEFENDANT ISAAC LAUFER MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION AND DEFENDANT ISAAC LAUFER MONTCLAIR CARE CENTER d/b/a MARQUIS CENTER FOR NURSING AND REHABILITATION**

**Isaac Laufer, Montclair Care Center d/b/a Marquis Care Center for Nursing And Rehabilitation, and Lori Maurel**
                    **Defendants.**

---

**PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF MICHAEL SCARIONE, GRANT DISQUALIFICTION OF NOTARY PUBLIC JEFFREY MARCUS, AND GRANT DISCOVERY SANCTIONS AGAINST JACKSON LEWIS LAW FIRM AND MR. BAKEN COUNSEL FOR DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION AND DEFENDANT ISAAC LAUFER, MONTCLAIR CARE CENTER d/b/a MARQUIS CARE CENTER FOR NURSING AND REHABILITATION**

1